E-FILED
Monday, 20 March, 2023  09:05:38 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MARIO HURTADO-MEZA,                )
  Plaintiff,                          )
                                    )    Case No. 21-2178
                                    )
NICK CANNATARO, et. al.,           )
  Defendants                       )

CASE MANAGEMENT ORDER

This cause is before the Court following its attempts to recruit counsel to represent Plaintiff.

Plaintiff alleges Defendants at Jerome Combs Detention Center failed to provide adequate medical care for an infection leading to gangrene and the amputation of his toe. *See* October 4, 2021, Merit Review Order.   After Defendants filed a Motion for Summary Judgment, the Court agreed to try and find counsel to represent Plaintiff. *See* January 9, 2023, Text Order.   Plaintiff's previous filings were clear and on point and Plaintiff had adequately participated in Court hearings, but Plaintiff stated he had limited education and English was not his first language.  *See* January 9, 2023, Text Order.  Unfortunately, the Court's efforts to recruit counsel were not successful.

The law is clear "[t]here is no right to court-appointed counsel in federal civil litigation." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). The most the Court can do is ask for volunteer counsel.  *See Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992).

The Seventh Circuit has explained in considering a motion for counsel, a district court must first determine whether the indigent plaintiff made a reasonable attempt to obtain counsel or was effectively precluded from doing so. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), *citing Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993).  In this case, Plaintiff had made some effort to find counsel. [5].

The court next considers if the plaintiff appears competent to represent himself given the difficulty of the case. *Id.*  Specifically, the Court determines "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt,* 503 F.3d at 655.  The Court must consider all aspects of the litigation including gathering evidence and responding to motions. *Eagan v. Dempsey*, 2021 WL 456002, at *8 (7th Cir. 2021).

There are no "fixed criteria" to assist in the determination of competency. *Eagan*, 2021 WL 456002, at *9.  Instead, a court can consider a variety of factors including "literacy, communication skills, educational level, litigation experience, intellectual capacity, and psychological history." *Id.* "These are practical inquiries, and the court should consider any available relevant evidence." *Id.*

There are also "no fixed criteria" for evaluating the factual or legal difficulty of any case. *Id*. "Indeed, we have resisted laying down categorial rules or presumptions for or against recruitment of counsel; rather, '[t]he inquiry into plaintiff competence and case difficulty is particularized to the person and case before the court.'" *Id., quoting Pruitt,* 503 F.3d at 656.

Nonetheless, while appointing counsel in this case would have been beneficial to both Plaintiff and the Court, the Court cannot require an attorney to represent Plaintiff regardless of his ability to litigate his claims. The *Pro Bono* Litigation Coordinator contacted approximately 12 attorneys on a list of attorneys or law firms who have previously indicated a willingness to take a *pro bono* appointment.  However, none were willing or able to accept appointment in this case.  The Coordinator next sent an email through the Seventh Circuit Bar Association to more than 1, 1550 attorneys, but again, no one agreed to represent Plaintiff.

As noted, recruiting *pro bono* counsel is a difficult task because the need for *pro bono* attorneys far exceeds the supply. *See McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020)("District courts are thus  inevitably in the business of rationing a limited supply of free lawyer time.); *Mejia v. Pfister*, 988 F.3d 415, 420 (7th Cir.  2021)(("the district court found itself having to make a choice about how best to allocate scarce resources, for it remains  the sad reality that there are too many indigent litigants and too few lawyers willing  and able to volunteer for these cases.")(internal quotation omitted).

The Seventh Circuit Court of Appeals has further noted "[t]he insufficient number of volunteer attorneys in some of our districts limits courts' ability to locate representation for indigents." *Giles v. Godinez*, 914 F.3d 1040, 1053 (7th Cir.), *cert. denied,* 140 S. Ct. 50, 205 L. Ed. 2d 38 (2019).

> The help of recruited lawyers is a valuable resource but a limited one. Demand often exceeds supply, … Given this dynamic, identifying a volunteer is not always possible, especially for cases outside of major metropolitan areas. There are limits to what a court must do after deciding to recruit counsel. *Wilborn*, 881 F.3d at 1008.

3

For instance, in the Central District, there are nearly 750 *pro se* prisoner cases pending at this time with more than 500 new *pro se* prisoner cases filed each year. Nearly all *pro se* prisoners request appointment of *pro bono* counsel several times during the pendency of their cases. *See Eagan*, 2021 WL 456002, at * 22 (Easterbrook, J., dissenting)(noting the limited attorney pool in the Central District of Illinois).

Given the number of attorneys already contacted in this case, the Court does not believe continued efforts to find counsel to represent Plaintiff in this case would be fruitful. Therefore, Plaintiff is advised he must continue to represent herself in this litigation.  Plaintiff is also advised he may continue to try and find counsel on his own.

IT IS THEREFORE ORDERED:

1) The Court was unable to recruit *pro bono* counsel to represent Plaintiff after contacting more than 1,560 attorneys.  Given the number of attorneys contacted in person and by email, the Court does not believe additional efforts would provide different results.  Therefore, Plaintiff must continue to represent himself in this litigation.

2) On its own motion, the Court will extend the deadline for Plaintiff to file a response to the pending motion for summary judgment to April 10, 2023. Plaintiff is reminded if he fails to provide a response on or before the deadline,

the Court will consider the motion without input from Plaintiff and will accept

the Defendants' statement of facts as true for purposes of considering the

dispositive motion.

Entered this 20th day of March, 2023.


s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE